Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| JOSEPH ACEVEDO MALDONADO<br><br>Recurrente<br><br>V.<br><br>INSTUTUCIÓN CORRECCIONAL BAYAMÓN 501<br><br>Recurrido | KLRA202500354 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-278-25<br><br>Sobre:<br>Dieta |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2025.

Comparece el señor Joseph Acevedo Maldonado (en adelante, señor Acevedo Maldonado o parte recurrente), mediante *recurso de revisión de decisión administrativa,* firmado por este el 3 de junio de 2025 y recibido ante este Tribunal de Apelaciones el 11 de junio de 2025[1]. Por medio de este, nos solicita que, revisemos la *Resolución* emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante, DCR o parte recurrida).

Por los fundamentos que se exponen a continuación, se desestima el recurso por falta de jurisdicción por academicidad.

**I**

El 21 de febrero de 2025, el señor Acevedo Maldonado, quien se encuentra recluido en la institución carcelaria Bayamón 501, presentó la *Solicitud de Remedio Administrativo B-278-25.* En esencia, sostuvo que, su nutricionista le había ordenado una dieta

---

[1] Traído ante nuestra atención el 16 de junio de 2025.

alta en fibra, baja en grasa, sin lactosa y que incluyera tres (3) meriendas diarias. Indició que, llevaba cinco (5) años recibiendo la mencionada dieta pero que, estaba experimentando problemas en la renovación de la misma. La parte recurrente explicó que, unos doctores al renovarle la dieta lo hicieron de manera errónea, ya que no lo hicieron con las especificaciones de la original. Solicitó al DCR la intervención del Director Médico para que le ayudara con la situación.

El 12 de marzo de 2025[2], la División de Remedios Administrativos emitió la *Respuesta del [Á]rea Concernida/Superintendente.* Por medio de esta, expresó lo siguiente:

> Le recuerdo que de surgir una emergencia de salud, contamos con la Sala de Emergencia en el CMC las 24 horas los 7 días de la semana. Se estar[á] verificando el caso que refiere. Le estar[é] coordinando una cita con la nutricionista y el m[é]dico internista asignado a su anexo de vivienda. Certifico que la información antes suministrada es correcta.

Inconforme, la parte recurrente presentó *Solicitud de Reconsideración.* Acotó que, necesitaba una cita de urgencia con la nutricionista y otros médicos con el propósito de solucionar su situación.

El 3 de abril de 2025, la División de Remedios Administrativos acogió la solicitud de reconsideración interpuesta por la parte recurrente.

Por otro lado, el 13 de mayo de 2025, la División de Remedios Administrativos emitió la *Resolución* cuya revisión nos ocupa. En virtud de esta, esbozó las siguientes determinaciones de hechos:

1. El recurrente presentó Solicitud de Remedios Administrativos el 21 de febrero de 2025 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito solicita la dieta ordenada por la nutricionista.

---

[2] Recibida por el DCR el 17 de marzo de 2025.

2. Se realiza Notificación al Dr. Marcos Devarie, Director Clínico, Complejo Correccional Bayamón el 25 de febrero de 2025.

3. El 17 de marzo de 2025 se recibe respuesta por parte de la Sra. Michelle Marín, Supervisora, Physician Correctional.

4. El 20 de marzo de 2025 se realiza Respuesta al Miembro de la Población Correccional por parte de la Sra. Maribel García Charriez, Evaluadora, Remedios Administrativos, Oficina de Bayamón.

5. Se le hace la entrega al recurrente del Recibo de Respuesta el 1 de abril de 2025.

6. El 3 de abril de 2025, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

7. Se acoge la petición de reconsideración el 16 de abril de 2025.

El ente recurrido, expresó lo siguiente:

Tenemos conocimiento que el recurrente el 29 de abril de 2025 comenzó a otorgarle la dieta. La dilación de la misma surge por un error involuntario en la redacción del documento de requisición de Orden de Dieta.

Consecuentemente, dispuso lo siguiente:

A base de lo antes explicado confirmamos y ampliar la respuesta recibida por de [sic.] la Sra. Michelle Marín, Supervisora, Physician Correctional.

En desacuerdo, la parte recurrente presentó el recurso de epígrafe. A pesar de que no incluyó ningún señalamiento de error, la parte recurrente solicita que revisemos la *Resolución* recurrida. Arguyó que, a la fecha de la presentación del recurso llevaba cuatro (4) meses sin recibir la dieta y sin ser citado por su nutricionista ni internista. Solicitó, además que, ordenamos a que se le renovara la dieta según fue asignada.

Mediante *Resolución* emitida el 27 de junio de 2025, le ordenamos al Procurador exponer su posición respecto al recurso de epígrafe.

El 10 de julio de 2025, el DCR representado por la Oficina del Procurador General de Puerto Rico, presentó el *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[3] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56 (2025); *OEG v. Martínez Giraud,* 210 DPR 79 (2022); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares,* supra.

En *Torres Rivera v. Policía de Puerto Rico,* supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la

---

[3] *Rolón Martínez v. Supte. Policía,* 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016).

actuación administrativa lesionó derechos constitucionales fundamentales.[4]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[5]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente

---

[4] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.
[5] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez v. Consejo de Titulares*, supra. En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

## B. Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583

Conforme a las disposiciones contenidas en la LPAU y acorde con el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, el cual establece las facultades del Departamento de Corrección y Rehabilitación, se creó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 de 3 de junio de 2015 (Reglamento Núm. 8583). Además, este fue promulgado al amparo de la ley federal conocida como *Civil Rights of Institutionalized Person Act*, con el fin de canalizar de forma efectiva los reclamos de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 670.

El objetivo principal del referido esquema legal es que, toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal del Departamento de Corrección y Rehabilitación. Asimismo, este tiene como objetivo el evitar y reducir la presentación de pleitos en los tribunales de instancia. Véase, Introducción del Reglamento Núm. 8583, *supra*; *Pérez López v. Depto. Corrección*, supra, pág. 670. En específico, la Regla VI del Reglamento Núm. 8583, dispone que la División de Remedios Administrativos, tendrá jurisdicción para atender toda solicitud de remedio presentada por los miembros de la población correccional, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional, entre otras. *Pérez López v. Depto. Corrección*, supra, pág. 670. La División de Remedios Administrativos cuenta con un procedimiento para atender las solicitudes de remedios instadas por la población correccional. En las Reglas XII-XV se establecen los estándares y procedimientos para la radicación y contestación de solicitudes de remedio. Reglamento Núm. 8583, *supra*.

Finalmente, el Reglamento 8583, *supra*, dispone que, el Tribunal de Apelaciones podrá realizar la revisión judicial de las solicitudes de remedios administrativos instadas por los miembros de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 671. En lo pertinente, dispone lo siguiente:

1. El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a

partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.

2. [...][6]

## C. Academicidad

Como es sabido, los tribunales revisores solo podremos resolver los casos que sean justiciables. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007); *Bhatia Gautier v. Gobernador*, supra, pág. 68. Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

Una de las manifestaciones concretas del principio de justiciabilidad es la doctrina de academicidad. *Smyth, Puig v. Oriental Bank*, supra, pág. 78. Sobre el particular, nuestro más Alto Foro ha reconocido que los tribunales pierden su jurisdicción sobre

---

[6] Regla XV del Reglamento Núm. 8583, *supra.*

una controversia cuando, durante el trámite judicial, ocurren cambios fácticos o judiciales que tornan en académica o ficticia su solución. Esto es, el foro judicial no puede entender sobre un caso que ha perdido su condición de controversia viva y presente en atención a los cambios fácticos o de derecho acaecidos en el transcurso del tiempo. *Pueblo v. Pagán Medina*, 177 DPR 842, 844 (2010); *Super Asphalt v. AFI y otros*, supra, pág. 816. Asimismo, deberán ser evaluados los eventos anteriores, próximos y futuros, a los fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Íd.*

Una vez se determina que ha desaparecido el carácter adversativo entre los intereses de las partes involucradas, los tribunales pierden su jurisdicción en el pleito y, por tanto, deben abstenerse de considerar el caso en sus méritos. Con esta limitación sobre el poder de los tribunales, se persigue evitar el uso innecesario de los recursos judiciales y obviar pronunciamientos autoritativos de los tribunales que resulten superfluos. (Citas omitidas). *Smyth, Puig v. Oriental Bank*, supra, pág. 78. Véase *Super Asphalt v. AFI y otro*, supra, pág. 816.

Sin embargo, existen varias excepciones a la doctrina de academicidad: a saber, cuando se plantea una cuestión recurrente y que por su naturaleza evade o se hace muy difícil la adjudicación ante los tribunales; en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal; si la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia; en los casos en que el tribunal ha certificado un pleito de clase y la controversia se tornó académica para un miembro de la clase, mas no para el representante de la misma; o aquellos casos que aparentan ser académicos, pero que en realidad no lo son por sus consecuencias colaterales. *El Vocero v. Junta de Planificación*, 121 D.P.R.115 (1988); *Smyth, Puig v. Oriental Bank*, supra, pág. 78.

Como corolario de lo anterior, la Regla 83 (B)(5) y (C) del Reglamento del Tribunal de Apelaciones expone lo siguiente:

(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:

[. . . . . . . .]

(5) Que el recurso se ha convertido en académico.

(C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.[7]

Esbozada la normativa que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En síntesis, en su recurso, el señor Acevedo Maldonado nos solicita que revisemos la *Resolución* emitida por la División de Remedios Administrativos del DCR. Argumentó que, al 18 de febrero de 2025, no se le había estado proveyendo la dieta libre de irritantes y lactosa, así como baja en sodio, que le fue ordenada por Physician Correctional.

En aras de atender adecuadamente el reclamo del señor Acevedo Maldonado, examinamos minuciosa y ponderadamente el recurso, la copia del expediente administrativo que nos fue suministrada, así como el *Escrito en Cumplimiento de Orden* presentado por la parte recurrida representada por la Oficina del Procurador General de Puerto Rico.

En lo pertinente, se desprende del expediente ante nuestra consideración que, insatisfecho con la *Respuesta al Miembro de la Población Correccional* emitida por la agencia recurrida; el día 3 de abril de 2025, el recurrente presentó una *Reconsideración* ante el (la) Coordinador(a) de Remedios Administrativos.

---

[7] Regla 83 (B)(5) y (C) del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

Cabe destacar que, el 29 de abril de 2025, relacionado al reclamo del señor Acevedo Maldonado, Physician Correctional efectuó una *Requisición de Orden de Dieta* libre de irritantes, baja en sodio y libre de lactosa, con una vigencia de noventa (90) días.

Así las cosas, y en atención al petitorio de reconsideración del recurrente, el 13 de mayo de 2025, la señora Damaris Robles Domínguez, Coordinadora Regional de la División de Remedios Administrativos (en adelante, la Coordinadora), emitió *Resolución*. De la misma se desprende, entre otros asuntos, que el 16 de abril de 2025, se acogió la aludida petición de reconsideración del recurrente.

Subsiguientemente, el 30 de junio de 2025, la Coordinadora emitió Certificación que, en lo particular, lee como sigue:

> Yo, Damaris Robles Domínguez, Especialista, Sección de Remedios Administrativos del Departamento de Corrección y Rehabilitación de Puerto Rico, certifico que el Sr. Joseph Acevedo Maldonado, miembro de la población correccional de la Institución Correccional Bayamón 501 est[á] recibiendo una dieta libre de irritantes, baja en sodio y libre de lactosa, según se desprende de la *Requisición de Orden de Dieta* la cual est[á] activa hasta el 20 de julio de 2025.

Consecuentemente, habida cuenta de que el reclamo del recurrente ya fue debidamente atendido, nos resulta forzoso concluir que el recurso ante nuestra consideración se tornó académico. Es por lo anterior que, carecemos de jurisdicción para atender el mismo.

**IV**

Por los fundamentos que anteceden, se *desestima e*l recurso al haberse tornado académico.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones